# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00087-NYW

JUANITA IRENE THOMPSON, f/k/a Juanita Irene Arcand,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This action comes before the court pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83(c), for review of the Commissioner of Social Security's final decision denying Plaintiff Juanita Irene Thompson's ("Plaintiff" or "Ms. Thompson")[1] application for Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated August 20, 2015 [#21], this civil action was referred to this Magistrate Judge for all purposes pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). *See* [#21]. The court has carefully considered the Complaint [#1, filed Jan. 13, 2015],[2] Defendant's Answer [#11, filed May 12, 2015],

---

[1] The court notes that although the Administrative Record often refers to Ms. Thompson using the name Juanita Irene Arcand, this court will refer to her by the name she presently uses.

[2] This Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file. For the Administrative Record, the court then refers to the page number associated with the Record, which is found in the bottom right-hand corner of the page.

Plaintiff's Opening Brief [#15, filed June 8, 2015], Defendant's Response Brief [#16, filed July 8, 2015], Plaintiff's Reply Brief [#17, filed July 21, 2015], the entire case file, the Administrative Record, and applicable case law. For the following reasons, I **REVERSE** the Commissioner's final decision and **REMAND** for further proceedings.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits under Title XVI of the Act on July 23, 2012. [#12-2 at 14]. Ms. Thompson was 52 years old at the time of her application, which is defined as closely approaching advanced age. [#12-2 at 20 (citing 20 C.F.R. 416.963)]. Ms. Thompson's initial claim for disability was based on her conditions including migraines, arthritis, asthma, and heart palpitations. [#12-3 at 47]. Ms. Thompson also suffered trauma to her right wrist when she was stabbed with a pitchfork during a domestic dispute. *See* [#12-7 at 188; #12-7 at 240; #12-7 at 244-245].

After the initial denial of Ms. Thompson's application, Administrative Law Judge Richard J. Maddigan ("ALJ") held a hearing on July 29, 2013. [#12-2 at 22]. The ALJ issued a hearing decision on August 5, 2013, which denied the application for disability benefits at the last step of the five-step sequence for determining disability. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps).

At step one, the ALJ determined that Ms. Thompson has not engaged in substantial gainful activity since July 23, 2012, the date of her application. [#12-2 at 16]. At step two, the ALJ found that Ms. Thompson "has the following severe impairments: (1) Obesity and (2) Arthritis." [#12-2 at 16]. The ALJ found that Ms. Thompson's complaints of asthma attacks at

---

For documents outside of the Administrative Record, the court refers to the page number assigned in the top header by the ECF system.

least once per week in the summer and 3 migraine headaches per week were no more than mild impairments because there was a paucity of medical evidence concerning Ms. Thompson's medical treatment for these conditions, there was inconsistency between Ms. Thompson's allegations at the hearing and her admissions to her providers, and there was a lack of any objective diagnostic evidence. [#12-2 at 16]. At step three, the ALJ held that Ms. Thompson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [#12-2 at 17]. The ALJ then concluded that Ms. Thompson has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 416.967(c) except she can occasionally use the right dominant hand to manipulate objects; stand and walk for 3 out of 8 hours; bend or stoop for 3 out of 8 hours; squat and kneel for less than an hour out of 8; occasionally lift and carry 25 pounds; must be allowed to change positions; and should avoid dust, fumes, and ladders. [#12-2 at 17]. At step four, the ALJ concluded that Ms. Thompson was unable to perform any past relevant work (her past relevant work was as an order clerk and dog groomer). [#12-2 at 20]. At step five, the ALJ determined that considering Ms. Thompson's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could perform, and therefore determined that a finding of "not disabled" was appropriate. [#12-2 at 20-21].

On December 8, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner. *See* [#12-2 at 1]; 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993).

Plaintiff filed this action on January 13, 2015. *See* [#1]. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405(g).

## LEGAL STANDARDS

### I. Standard of Review

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## II.     Social Security Disability Appeal Process

Supplemental Security Income is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act.  42 U.S.C. § 1382.  An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Id.* at 750.  "Step one requires the agency to determine whether a claimant is 'presently engaged in substantial gainful activity.'"  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004).  Step two requires the agency to consider whether a claimant has "a medically severe impairment or impairments."  *Allen*, 357 F.3d at 1142.  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  At step three, the ALJ considers whether a claimant's medically severe impairments "meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1."  *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).

If the claimant's impairments are not equivalent to a listed impairment, at step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity (RFC) and compare the RFC to the claimant's past relevant work. The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work) . . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
> …
>
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain….

*Williams*, 844 F.2d at 751-52. The Commissioner can meet his or her burden by the testimony of a vocational expert, so long as the question posed to the vocational expert accurately portrays Plaintiff's limitations as supported by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

## ANALYSIS

Ms. Thompson contends that the ALJ committed error in six different ways: (1) the ALJ did not properly weigh Dr. Campbell's opinion of her restrictions; (2) the ALJ improperly gave greater weight to Dr. Summerlin over Dr. Campbell, despite what was included in the RFC; (3) the ALJ did not properly assess plaintiff's lifting restrictions; (4) the ALJ failed to properly assess whether the Grid Rules directed a finding of disability; (5) the ALJ did not confirm that the Vocational Expert's testimony was consistent with the Dictionary of Occupational Titles ("DOT") or other government publications; and (6) the ALJ failed to properly assess the impairments caused by plaintiff's obesity. [#15]. This court will consider each of these contentions of error in turn.

### I.   Dr. Campbell's Opinions

Half of Ms. Thompson's arguments on appeal pertain to the ALJ's stated determination that he afforded consultative examining physician Dr. Velma Campbell's opinion on Ms. Thompson's limitations "little weight," while nonetheless relying heavily on that opinion in determining the appropriate RFC. Because of the overlap in issues presented, this court will consider Plaintiff's contentions of error related to Dr. Campbell together.

Velma Campbell, M.D., M.P.H., a consultative examiner, evaluated Ms. Thompson on June 6, 2013 and reviewed her medical records. *See* [#12-7 at 244-251]. Dr. Campbell opined

7

on Ms. Thompson's limitations, concluding that Ms. Thompson could stand and walk for 3 out of 8 hours; bend and stoop for 3 out of 8 hours; squat and kneel for less than 1 out of 8 hours; lift 15 pounds 3 hours per day; and would have difficulties using the right hand for manipulative tasks. [#12-7 at 247-250]. These restrictions differ from the opinion of another consultative examiner, Adam Summerlin, M.D. Dr. Summerlin examined Ms. Thompson in November 2012, *see* [#12-7 at 211], and opined that Ms. Thompson could lift and carry fifty pounds occasionally and twenty-five frequently, and that she can only occasionally reach, handle, finger, or feel with her right upper extremity. [#12-7 at 214-215]. He also stated that she had no limitations on standing, walking, sitting, or postural activities. [#12-7 at 214-215].

The ALJ stated that he gave Dr. Campbell's opinion "little weight" because: (1) it "was rendered after a single exam and review of some records"; (2) it, "and particularly the limitations on walking and standing, are not supported by the claimant's exam findings or the objective diagnostic findings, which demonstrate very mild abnormalities and no significant abnormality of the lower extremities"; and (3) it is not consistent with Ms. Thompson's treatment history. [#12-2 at 19]. Plaintiff contends that the ALJ's assignment of "little weight" to Dr. Campbell's opinion was not supported by the record and was therefore, in error. She alleges that the ALJ improperly gave greater weight to Dr. Summerlin's opinion, and also failed to appropriately account for the lifting and carrying restrictions.

Nevertheless, as Plaintiff acknowledges, the ALJ's RFC is "substantially similar" to the limitations Dr. Campbell expressed in her opinion. *See* [#15 at 23]. The ALJ's RFC finding almost directly mirrors Dr. Campbell's opinion. Plaintiff argues that the ALJ failed to properly assess Plaintiff's lifting restrictions because the RFC states that Ms. Thompson "can occasionally

lift and carry 25 pounds,"[3] but such a limitation was inconsistent With Dr. Campbell's opinion, which allows for lifting/carrying of twenty-five pounds for only one hour per day. [#15 at 28-29].

Plaintiff seems to be arguing that the ALJ erred both by only giving Dr. Campbell's opinion little weight and also arriving "at an RFC finding that is substantially similar to Dr. Campbell's restrictions." [#15 at 23]. But as Plaintiff acknowledges, the ALJ's RFC finding is substantially similar to the opinion which Plaintiff says the ALJ erroneously gave "little weight." *See* [#15 at 24-25 ("[T]he ALJ's RFC finding is far more similar to Dr. Campbell's opinion than to Dr. Summerlin's opinion in numerous respects.")]. To the extent that Plaintiff argues that the ALJ erred by incorporating limitations from Dr. Campbell's opinion into the RFC after assigning them "little weight" [#12-2 at 19], the court finds that such argument is not a proper basis for reversal of the ALJ's determination. By incorporating a significant number of limitations identified by Dr. Campbell, the ALJ arrived at an end result that was more favorable to Ms. Thompson than if the ALJ had only included limitations consistent with Dr. Summerlin's opinion that was given "great weight." *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."). Even if the ALJ determined that Dr. Campbell's opinion should have been afforded "great weight," there would have been little change to the RFC. Any "error" to

---

[3] "An activity or condition is considered 'constant' when it exists two-thirds or more of the time; it is considered 'frequent' when it exists from one-third to two-thirds of the time; and it is considered 'occasional' when it exists up to one-third of the time." *Carson v. Barnhart*, 140 F. App'x 29, 37 (10th Cir. 2005) (citing U.S. Dep't of Labor, Employment & Training Admin., Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles Part A (1993), App. C, at C-3).

properly label the weight given to the respective physicians' opinions was harmless to Ms. Thompson because the RFC as crafted actually benefitted, rather than hurt her.

The only meaningful distinction between the ALJ's RFC and Dr. Campbell's opinion which Plaintiff has identified (or which the court can ascertain from the record) is the difference in the total amount of weight that Ms. Thompson can lift on an occasional basis. The ALJ's RFC limited stated that Ms. Thompson "can occasionally lift and carry 25 pounds,"[4] [#12-2 at 17], while the ALJ noted that Dr. Campbell opined that Ms. Thompson could lift 15 pounds 3 hours per day. [#12-7 at 249]. But as recognized in Plaintiff's Opening Brief, the Dr. Campbell opined that Ms. Thompson could lift fifteen pounds for three hours per day, <u>or</u> "25# up to one hour a day." [#12-7 at 247]. Dr. Summerlin opined that Ms. Thompson's maximum lifting or carrying capacity would be fifty pounds occasionally, and twenty-five pounds frequently.[5] [*Id.* at 215]. While not stated expressly, the ALJ appears to blend Dr. Campbell's limitation of Ms. Thompson's lifting/carrying restriction of twenty-five pounds up to one hour a day with Dr. Summerlin's finding that Ms. Thompson could lift and carry twenty-five pounds frequently, *i.e.*, occurring from one-third to two-thirds of the time."

The ALJ's RFC determination is not required to directly mirror the finding of any medical opinion. "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004); *see also*

---

[4] Within the Social Security disability context, "occasionally" means "from little to up to one third of the day, generally totaling less than two hours in an eight hour work day. " *See* Social Security Ruling 96-6p, 1996 WL 374185, at *3 (SSA 1996).

[5] As defined by the Commissioner's regulations, "frequently" means "occurring from one-third to two-thirds of the time." *See* Social Security Ruling 83-10, 1983 WL 31251, at *5-*6 (SSA 1983).

*McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (the ALJ's RFC assessment is an administrative, rather than a medical determination). Because an RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." *Dixon v. Apfel*, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. 1999) (unpublished); *see also* 20 C.F.R. § 416.945(a). Moreover, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo*, 682 F.3d at 1288.

The court notes the record evidence, including the evidence cited by the ALJ, regarding Ms. Thompson's right arm supports the ALJ's limitation as included in the RFC. In particular, the ALJ noted loss of tissue and tone in the right forearm, decreased sensation in the right forearm, positive Tinel's signs in the right wrist, diminished range of motion of the right wrist and elbow, 3-4/5 right grip strength, and 3/5 right pinch strength. [#12-2 at 18]. The ALJ found that this evidence is "indicative of some limitation in the ability to lift and carry heavy objects, or use the right arm for frequent manipulative tasks." [#12-2 at 18]. The ALJ concluded that "[t]hese findings suggest that the claimant could use her right arm for manipulative tasks at least occasionally and retains enough strength to lift and carry at least moderately heavy amounts of weight." [#12-2 at 18]. This evidence, together with the opinions of Dr. Summerlin, who found that Ms. Thompson could lift 50 pounds occasionally and 25 pounds frequently, and Dr. Campbell, who found that Ms. Thompson could lift 25 pounds for an hour a day, constitutes substantial evidence to support the ALJ's finding in the RFC that Ms. Thompson could occasionally lift and carry 25 pounds. Nothing in Ms. Thompson's treating medical records suggests any kind of limitation to her lifting/carrying. While the ALJ could have been more

explicit in explaining his mitigating gesture, it was appropriate for the ALJ to temper Dr. Summerlin's opinion with Dr. Campbell's opinion and other the written medical records, but still find that an appropriate restriction within the RFC was that Plaintiff could lift up to 25 pounds occasionally. *See Chapo*, 682 F.3d at 1288-89. Indeed, in doing so, he again favored Plaintiff in the disability determination. This court finds that any failure on the part of the ALJ was harmless, and the limitations contained in the RFC are supported by substantial evidence.

**II.     Consideration of the Grid Rules**

Plaintiff argues that the ALJ erred by improperly considering the Grid Rules in assessing Ms. Thompson's claim for disability. Plaintiff asserts that the ALJ only considered the medium Grid Rules, and failed to consider whether Ms. Thompson's RFC allows for little more than sedentary work. [#15 at 16]. Essentially, Plaintiff asserts that while the ALJ found that Ms. Thompson could perform medium work with certain restrictions, what the ALJ's RFC really meant was that Ms. Thompson was limited to sedentary work, which justifies a finding of disabled under the Grid Rules. This court respectfully disagrees.

The ALJ found that Ms. Thompson was capable of performing medium work, except that she could occasionally use the right dominant hand to manipulate objects; stand and walk for 3 out of 8 hours; bend or stoop for 3 out of 8 hours; squat and kneel for less than an hour out of 8; can occasionally lift and carry 25 pounds; must be allowed to change positions; and should avoid dust, fumes, and ladders. [#12-2 at 17]. Where, as here, the claimant does not have an RFC for a full range of the level of work on a daily basis and is not able to do the majority of jobs in that range, the ALJ may not rely conclusively on the grids. *See Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003). Recognizing that Ms. Thompson did not fit within the grid for medium

work, the ALJ properly consulted the VE to determine the extent to which Ms. Thompson's limitations eroded the occupational database. *See Mendez v. Colvin*, 588 F. App'x 776, 784 (10th Cir. 2014). The VE then opined that, considering each of Ms. Thompson's limitations in her RFC, Ms. Thompson was capable of performing representative occupations including a dealer accounts investigator, D.O.T. 241.367-038, light svp;[6] storage facility rental clerk, D.O.T. 295.367-026 light, svp 2; and toll collector, D.O.T. 211.462-038.

This court does not find that the ALJ committed an error in applying the applicable legal standard where he followed the proper procedural steps, as outlined in numerous Tenth Circuit decisions, in reaching an RFC and then seeking testimony from a Vocational Expert when the RFC he arrived at included that Ms. Thompson could perform medium work with enough additional restrictions to take her out of the applicable grid. *See Mendez*, 588 F. App'x at 784 (finding no error in ALJ's decision not to use grid and rely on testimony of a vocational expert where the claimant lacked the ability to perform the full range of work in a particular RFC category); *see also Hernandez v. Colvin*, 567 F. App'x 576, 584 (10th Cir. 2014); *Baker*, 84 F. App'x at 13; *Ramirez v. Astrue*, 255 F. App'x 327, 330 (10th Cir. 2007).

Nevertheless, the court notes that, for the reasons stated below, the ALJ's reconsideration of whether or how Plaintiff's obesity affects the RFC could, in turn, affect how the Grid Rules are applied. Therefore, to the extent that the ALJ changes the RFC, the court also directs the ALJ to reconsider the application of the Grid Rules. If, however, the ALJ's consideration of

---

[6] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Vigil*, 805 F.3d at 1201 n.2 (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003).

Plaintiff's obesity does not change the RFC, then there is no independent basis to reconsider the application of the Grid Rules.

### III. Consideration of Whether the Vocational Expert's Testimony Was Consistent With the Dictionary of Occupational Titles or Other Government Publications

Plaintiff argues that the VE's testimony is not consistent with the Dictionary of Occupational Titles ("DOT") or other governmental publications, and that the ALJ failed to follow the rule of law which requires the ALJ to ask the VE the basis of his opinion and whether the opinion conflicts with the governmental publications. [#15 at 16-17].

Under SSR 00-4p, the ALJ must resolve apparent conflicts between a VE's testimony and the DOT. *See* SSR 00-4p, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between VE evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE's evidence to support a determination or decision about whether the claimant is disabled."). In *Haddock v. Apfel*, the Tenth Circuit stated that "an ALJ has a duty to fully develop the record even when the claimant is represented by an attorney . . . Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations [such as the DOT] falls within this duty." 196 F.3d 1084, 1091 (10th Cir. 1999). In *Haddock*, the Tenth Circuit explained:

> We do not mean by our holding that the Dictionary of Occupational Titles "trumps" a VE's testimony when there is a conflict about the nature of a job. We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.

*Haddock*, 196 F.3d at 1091.

Here, as explained above, the VE testified that given the limitations in Ms. Thompson's RFC, a hypothetical person with those limitations would be able to perform the position of dealer account investigator, D.O.T. 241.367-038, with an erosion of as high as 50% due to the inability to stand or walk beyond three of eight work hours. [#12-2 at 30]. The VE also testified that the hypothetical person could perform the job of storage facility renter clerk, D.O.T. 295.367-026, with an erosion of around 40% due to the limitation on use of the dominant right upper extremity and standing and walking limitations. [#12-2 at 30, 33-34]. The VE then testified that the hypothetical person could also work as a toll collector, D.O.T. 211.462-038.

The ALJ stated in his opinion that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information continaed in the Dictionary of Occupational Titles." [#12-2 at 21]. However, here, there appears to be no dispute that the record does not reflect the information necessary to resolve the conflict between the VE's testimony and DOT regarding the jobs of dealer accounts investigatory and storage rental clerk. Defendant nevertheless argues that any such error is harmless because the VE's testimony was sufficient to resolve any conflicts between the DOT and the VE's testimony about the job of toll collector.

The court finds that the VE's testimony regarding the requirements of the job as a toll collector is sufficiently detailed to constitute substantial evidence to resolve any conflict with the DOT. The vocational expert testified about the DOT lifting requirements and reaching and handling requirements, and then went on to explain that he had "vast experience . . . in job analysis of toll collectors" that allowed him to testify that the job was a "sit/stand optional" job, and also involved using the left hand 90% of the time. [#12-2 at 35-36]. The VE provided this

15

testimony in response to specific questioning about the requirements of that job. *See* [#12-2 at 33, 35-36]. Thus, the court finds that the requirements of SSR 00-4p were satisfied regarding the VE's consideration of the toll collector job and the ALJ's reliance on the VE's testimony in this regard. *See* 2000 WL 1898704, at *2 (requiring a "reasonable explanation for [a potential] conflict before [the ALJ may rely] on the VE's evidence to support a determination or decision about whether the claimant is disabled"); *Haddock*, 196 F.3d at 1091 (holding that an ALJ "must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Defendant argues, and this court agrees, that the fact that the ALJ's reliance on the VE's testimony regarding Ms. Thompson's ability to perform the job of toll collector is supported by substantial evidence renders any error in consideration of the jobs of dealer accounts investigator and storage facility rental clerk harmless. The VE testified that the job of toll collector is present in numbers reaching 125,000 jobs in the nation and 140 in the state, which is sufficient to find that the ALJ was substantially justified in concluding that a significant number of jobs exist in the national economy that Ms. Thompson could perform considering her age, education, work experience, and residual functional capacity. *See Evans v. Colvin*, No. 15-1222, 2016 WL 362438, at *3-4 (10th Cir. Jan. 29, 2016) (Commissioner was substantially justified in arguing that 18,831 remaining jobs in the national economy was sufficient for applying harmless error).

In *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), the Tenth Circuit stated that there is no bright line for determining how many jobs constitute significant numbers. Plaintiff argues that the present case falls within the "gray area" for determining whether there are a

significant number of jobs because the VE identified only 802 regional jobs. *See* [#17 at 23]. However, in *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009), the Tenth Circuit clarified "that the relevant test is either jobs in the regional economy or jobs in the national economy," although generally the focus is on the national economy. *Raymond*, 621 F.3d at 1274 n.2. And following *Raymond*, the Tenth Circuit found that even 18,831 remaining jobs in the national economy was sufficient to satisfy the harmless error analysis. *Evans v. Colvin*, No. 15-1222, 2016 WL 362438, at *4 (10th Cir. Jan. 29, 2016).

Accordingly, this court finds that to the extent the ALJ erred in his consideration of the jobs of dealer accounts investigator and storage facility rental clerk, such error was harmless with respect to the RFC as it standards. As noted above, however, to the extent that the ALJ changes the RFC in light of Plaintiff's obesity, the court respectfully directs the ALJ to also consider and address whether any testimony by a Vocational Expert is consistent with the DOT or other governmental publications.

## IV.    Assessment of the Impairments Caused by Plaintiff's Obesity

Plaintiff's last argument is that the ALJ erred by failing to explain what specific restrictions are caused by Ms. Thompson's obesity, when combined with other impairments. [#15 at 17]. In particular, Plaintiff states that the ALJ found Ms. Thompson's obesity to be severe, but despite saying that he would later explain how obesity impaired her, he failed to do so. [#17 at 21].

The ALJ found Ms. Thompson's obesity to be a severe impairment. [#12-2 at 16]. He stated that the objective medical evidence of record establishes that she was diagnosed with this impairment. [#12-2 at 16]. The ALJ explained in determining Ms. Thompson's RFC that he

17

had considered the effects of her obesity and its possible limitation of function in accordance with the requirements of SSR 02-1p. [#12-2 at 18]. He explained that "[a]s set forth in more detail below, [he found] that while the claimant's weight in itself is not disabling, in combination with [her] other impairments, it significantly limits her ability to do basic work activities." [#12-2 at 18]. The ALJ did not, however, mention her obesity or its effects in combination with her other impairments anywhere in the remainder of his opinion.

SSR 02-1p requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Titles II & XVI: Evaluation of Obesity, SSR 02–1p, 2000 WL 628049, at *1 (Sept. 12, 2002). Accordingly, an ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but rather, must "evaluate each case based on the information in the case record." *Id.* at *6. The ALJ must assess the effects of a claimant's obesity in conjunction with her other limitations. *See Bakert*, 84 F. App'x at 14.

This court finds that it must remand this case to the ALJ for further consideration on the basis of the ALJ's failure to explain what effect Ms. Thompson's obesity, in combination with her other limitations, has on her ability to do basic work activities. The ALJ's opinion is markedly silent on this point, and the court cannot infer from the record how Ms. Thompson's obesity factored into the ALJ's RFC. Nor is it proper for the court, without any explanation in the ALJ's opinion, to attempt to rationalize how the ALJ opined on Ms. Thompson's obesity by inferring that the limitations in the RFC on Ms. Thompson's ability to stand, walk, bend, stoop, squat, and kneel, arise from her obesity in connection with her other limitations. *See DeWitt v.*

*Astrue*, 381 F. App'x 782, 785-86 (10th Cir. 2010).  It may very well be that the ALJ has already accounted for Ms. Thompson's obesity within the existing limitations of the RFC, but this court cannot discern such analysis from the determination as it stands.

Accordingly, this court will REMAND to the ALJ with the instructions to explain how Ms. Thompson's obesity, in connection with her other limitations, impacts her ability to perform basic work activities.  While the court affirms on all other grounds presently before it, the court recognizes that on remand, the ALJ's determination of Ms. Thompson's RFC could change and other issues could arise.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that the Commissioner's final decision is **REVERSED** and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this order and judgment.

DATED: March 25, 2016                                          BY THE COURT:

                                                              s/ Nina Y. Wang_____
                                                              United States Magistrate Judge